UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AIMEE LYNN NELSON,<br><br>　　　　　　　Plaintiff,<br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　　　Defendant. | CASE NO. 2:22-CV-00945-LK<br><br>ORDER REVERSING DENIAL OF BENEFITS AND REMANDING FOR FURTHER PROCEEDINGS |

Plaintiff Aimee Nelson seeks review of the Commissioner's final decision denying her application for childhood disability benefits. Although the parties agree that the Administrative Law Judge ("ALJ") erred and that this case should be remanded, they disagree as to the proper scope of remand. The Court reverses the Commissioner's final decision and remands this case for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## I. BACKGROUND

Ms. Nelson applied for benefits in July 2017 based on her bipolar disorder, OCD, panic disorder, anxiety, depression, urinary frequency, migraines, heart races, and spells of dizziness.

ORDER REVERSING DENIAL OF BENEFITS AND REMANDING FOR FURTHER PROCEEDINGS - 1

Dkt. No. 9 at 64–65. She alleged a disability onset date of May 1999. *Id.* at 65. An ALJ determined, however, that Ms. Nelson's condition was not disabling before she turned 22 years of age, which is required to qualify for childhood disability benefits. *Id.* at 119–21 (October 2017 denial letter); *see* 42 U.S.C. § 402(d)(1)(B); 20 C.F.R. § 404.350(a)(5). This decision was upheld on reconsideration. Dkt. No. 9 at 124–26 (letter upholding denial on reconsideration). The ALJ also dismissed her subsequent request for a hearing as untimely. *Id.* at 87–88 (order of dismissal); *see* 42 U.S.C. § 1383(c)(1)(A) (the Commissioner must provide a hearing to any claimant who disagrees with an eligibility determination if the claimant requests a hearing within 60 days after notice of the determination). After the Appeals Council affirmed the ALJ's dismissal, Ms. Nelson filed suit in federal district court seeking judicial review of the Commissioner's determination. Dkt. No. 9 at 89–90, 92–98. The parties soon thereafter stipulated to reversal of the Commissioner's determination and agreed that Ms. Nelson should receive a hearing on remand. *Id.* at 108–11 (stipulation and order); *see also id.* at 116–17 (Appeals Council order remanding case and directing the ALJ to provide a hearing).

The ALJ conducted a telephonic hearing in January 2022. *Id.* at 8, 200, 225; *see also id.* at 24–63 (hearing transcripts). She heard testimony from Ms. Nelson, Ms. Nelson's mother, and a vocational expert. *See id.* at 32–62. Following her review of the remainder of the evidence (including medical records, treatment notes, and expert reports), the ALJ concluded that Ms. Nelson was not disabled at any time prior to January 3, 2000—the date she reached 22 years of age. *Id.* at 18. And while the ALJ allowed Ms. Nelson to amend her disability onset date to September 18, 1998, she refused to reopen the Commissioner's August 2014 determination denying Ms. Nelson's prior disability applications. *Id.* at 8, 31–32; *see also id.* at 65 (decision on previous claims issued on August 5, 2014). This action for judicial review ensued. Dkt. No. 5.

## II. DISCUSSION

Ms. Nelson sets forth several alleged errors in the ALJ's benefits determination. Specifically, she contends that the ALJ erred under steps two and three of the five-step analysis for determining benefits eligibility. Dkt. No. 11 at 11–15; *see* 20 C.F.R. § 404.1520(a)(4)(ii)–(iii). She further claims that the ALJ failed to articulate legally sufficient reasons for rejecting the opinions of three doctors, 20 C.F.R. § 404.1520c(b), and improperly rejected her hearing testimony. Dkt. No. 11 at 15–18. Ms. Nelson urges the Court to remand this matter for an immediate award of benefits. *Id.* at 19. Alternatively, she requests an order remanding the case and directing the Commissioner "to reopen and incorporate [her] past claims with [her] current 2017 claim." *Id.*; *see also id.* at 4–11 (explaining why the Court has jurisdiction to review the ALJ's refusal to reopen her previous claims).

The Commissioner concedes error and agrees that remand is appropriate. He argues, however, that remand should be for further administrative proceedings before the ALJ—not for a direct award of benefits. Dkt. No. 14 at 1–2 ("The Commissioner proposes that, on remand, the agency will reevaluate Nelson's subjective complaints, complete the administrative record, as necessary, and issue a new decision."). The Court first explains why remand for further proceedings is the appropriate remedy in this case. It then reviews the ALJ's refusal to reopen the Commissioner's August 2014 determination.

A.  **The "Credit-as-True" Rule and Scope of Remand**

When the ALJ commits legal error in denying a claim for benefits, the district court "ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). The Social Security Act, however, grants district courts flexibility in certain circumstances to reverse the ALJ's decision and remand for an immediate award of benefits rather than further administrative proceedings.

*Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014); *see* 28 U.S.C. § 405(g) (a district court may enter a judgment "affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing"). The Ninth Circuit has repeatedly made clear that remand for a benefits award is the "rare exception," not the rule. *Leon*, 880 F.3d at 1045; *see also Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (remand for a benefits award is an "extreme remedy"); *Treichler*, 775 F.3d at 1102 ("We have frequently exercised our discretion to remand for further proceedings, rather than for benefits.").

Remand for an immediate award of benefits is allowed only when three requirements (collectively referred to as the "credit-as-true" rule) are satisfied: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether that evidence is claimant testimony or a medical opinion; (2) there are no outstanding issues that must be resolved before a disability determination can be made, the record is fully developed, and further administrative proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the record as a whole would require the ALJ to find the claimant disabled on remand. *Leon*, 880 F.3d at 1045; *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). And even when all of these elements are met, a district court is not *required* to remand for an immediate award of benefits, *Leon*, 880 F.3d at 1045; rather, "the decision whether to remand a case for additional evidence or simply to award benefits is in [the court's] discretion," *Washington v. Kijakazi*, 72 F.4th 1029, 1041 (9th Cir. 2023) (cleaned up); *see also Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) (although the district court "may exercise its discretion to remand the case for an award of benefits," the court "is generally not required to exercise such discretion").

The credit-as-true rule is not triggered here.

1. The ALJ Failed to Provide Legally Sufficient Reasons for Rejecting Evidence

The Commissioner concedes that the first element of the rule is met because the ALJ failed to properly support her rejection of Ms. Nelson's hearing testimony. *See* Dkt. No. 14 at 3. And given the Commissioner's failure to defend against Ms. Nelson's remaining allegations of error, any argument as to those errors is waived. *See Mariah C. v. Kijakazi*, No. 6:22-CV-614-SI, 2023 WL 5827681, at *3 (D. Or. Sept. 8, 2023) ("The Commissioner's failure to defend the ALJ's reasoning or respond to Plaintiff's arguments challenging these reasons is a waiver of any argument that the ALJ did not err in these analyses.").

2. There are Outstanding Issues that Must Be Resolved Before a Determination of Disability Can Be Made

Ms. Nelson does not make it past the second element. At this stage of the analysis, a district court must "review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and 'all essential factual issues have been resolved.'" *Dominguez*, 808 F.3d at 407 (quoting *Treichler*, 775 F.3d at 1101). The second requirement of the credit-as-true rule "will not be satisfied if the record raises crucial questions as to the extent of a claimant's impairment given inconsistencies between h[er] testimony and the medical evidence in the record, because these are exactly the sort of issues that should be remanded to the agency for further proceedings." *Brown-Hunter*, 806 F.3d at 495 (cleaned up). The Commissioner advances several issues that he claims remain unresolved and are fit for adjudication on remand. Dkt. No. 14 at 3–5. The Court addresses them in turn.

(a) Disability Onset Date

The Commissioner first contends, in conclusory fashion, that "there are outstanding questions about the alleged disability onset date of [Ms. Nelson's] claim." *Id.* at 3. Not so. The ALJ expressly resolved this issue when she permitted Ms. Nelson to amend her disability onset

date to September 18, 1998. Dkt. No. 9 at 8; *compare Dominguez*, 808 F.3d at 409 (remand was necessary because the ALJ did not rule on the claimant's request to amend his disability onset date).

### (b) Completeness of the Record

Second, the Commissioner argues that Ms. Nelson has conceded the incompleteness of the current record by seeking to incorporate the records from her previous claims. Dkt. No. 14 at 3. Ms. Nelson admits that she "wanted the record to include the prior claim files," but counters that these prior claim files are "not necessary for a finding of disability." Dkt. No. 15 at 4 ("She has proven her disability (time and time again), and she is not in search of the *perfect* administrative record."). Ms. Nelson suggests that once her subjective complaints are properly credited, the record unambiguously establishes her disability. *Id.* "But this reverses the required order of analysis." *Dominguez*, 808 F.3d at 409. The Ninth Circuit has repeatedly explained that a district court must first conclude that there are no outstanding issues, that the record is fully developed, and that no conflicts or ambiguities remain in the *complete* record before crediting the discredited evidence as true and determining whether the claimant is disabled. *See, e.g.*, *id.*; *Leon*, 880 F.3d at 1045. As explained below, the ALJ applied the wrong legal standard in determining whether Ms. Nelson established good cause to extend the deadline for seeking review of the August 2014 determination. Should the ALJ extend that deadline on remand, incorporation of Ms. Nelson's prior claim records will be necessary.

### (c) Conflicts Between Work History, Clinic Notes, and Ms. Nelson's Symptom Testimony

The Commissioner next suggests that the record "casts doubt" on Ms. Nelson's testimony about the difficulties she experienced maintaining employment due to her frequent urination issues, migraines, anxiety, panic attacks, OCD, depression, bipolar disorder, and resulting

absenteeism. Dkt. No. 14 at 4; *see* Dkt. No. 9 at 37–39, 46–49 (testimony). The severity of Ms. Nelson's "long-standing mental health impairments" is, according to the Commissioner, undermined by the fact that she "actually worked recently, earning nearly $20,000 in 2019." Dkt. No. 14 at 4 (citing Dkt. No. 9 at 266). The Commissioner also points to "numerous records" that purportedly demonstrate Ms. Nelson's "normal" and "pleasant" mood. *Id.* This evidence does not conflict with Ms. Nelson's improperly discredited symptom testimony. Indeed, the Commissioner acknowledges that Ms. Nelson's 2019 work "occurred after the relevant period." *Id.*; *see* Dkt. No. 9 at 13 ("This case involves only one period at issue. Under the claimant's Title II application, the period at issue was the alleged onset date, September 18, 1998, to the date the claimant attained age 22, January 4, 2000."). And the ALJ had good reason to find that the records were not probative of the relevant period:

> [t]he relevant period to this decision is as to the claimant's functioning prior to the age of 22, which is substantially prior to 2019. I have proceeded to the other steps in my decision in light of the relevant period of time for my evaluation, the lack of substantial gainful activity prior to the claimant achieving the age of 22, and the significant lapse in time between the claimant achieving the age 22 and the income in 2019.

Dkt. No. 9 at 10–11.

The "numerous records" evincing Ms. Nelson's "normal" or "pleasant" mood are likewise nonstarters. The medical records cited by the Commissioner are clinic notes dated between December 1998 and February 2000, and they relate to Ms. Nelson's urinary issues, syncope, and nausea. Dkt. No. 14 at 4 (citing Dkt. No. 9 at 384, 389, 394, 396). These clinic notes do not conflict with or otherwise undermine Ms. Nelson's symptom testimony. Although they contain general reports of Ms. Nelson's pleasant demeanor or normal affect, such observations made during visits for urinary incontinence and dizziness do not negate Ms. Nelson's reports of allegedly debilitating mental health impairments stemming from her anxiety and bipolar disorder. *See, e.g.*, Dkt. No. 9

at 425 ("The course of Bipolar Disorder is often patchy and cyclic, and individuals with bipolar can present without symptoms for periods of time or in structured situations."). If anything, the clinic notes corroborate Ms. Nelson's testimony about her urinary tract issues and the impact they had on her ability to work. *See id.* at 384 (December 1998: Ms. Nelson likely had a "[u]rinary tract infection with possible early pyelonephritis"; she "was at work . . . and felt some dizziness and fatigue, as well as some worsening nausea"); *id.* at 389 (August 1999: Ms. Nelson reported syncope related to stress and had been treated for a bladder infection); *id.* at 393–94 (January 2000: Ms. Nelson complained of urinary frequency "every 30 seconds to a couple of minutes"; doctor scheduled urodynamic studies and cystoscopy); *id.* at 396 (February 2000: Ms. Nelson presented for further evaluation of urinary incontinence; undergoes testing). The clinic notes therefore do not present outstanding issues or conflicts.

        *(d) Conflicting Medical Opinions*

        The Commissioner last contends that remand for further proceedings is necessary because the record contains conflicting medical reports. The Court agrees. As noted above, the Commissioner does not contest Ms. Nelson's allegation that the ALJ failed to articulate legally sufficient reasons for rejecting Dr. Meinz's opinion. Dkt. No. 11 at 15–17; *see Mariah C.*, 2023 WL 5827681, at *3. This is critical because Dr. Meinz's opinion materially conflicts with the evaluations provided by agency medical consultants concluding that (1) there was insufficient evidence to evaluate and quantify Ms. Nelson's mental health-related limitations and (2) Ms. Nelson is not disabled. *See* Dkt. No. 9 at 64–71 (October 2017 evaluation); *id.* at 74–83 (March 2018 evaluation). Dr. Meinz opined that Ms. Nelson exhibited "rather severe disturbances in personality functioning." *Id.* at 433. And although Dr. Meinz was hesitant to diagnose Ms. Nelson with bipolar disorder, he opined that she did not "ha[ve] the capacity to maintain employment" and accordingly "recommend[ed] an application for Social Security benefits." *Id.* at 433–44. Dr.

Meinz also painted a much bleaker picture than Dr. Wagner—a medical professional who the ALJ found "somewhat persuasive." *Id.* at 15. Dr. Wagner opined in her May 2000 report that that Ms. Nelson had bipolar disorder but concluded that it was "treatable" and did "not preclude Ms. Nelson from being an appropriate and effective parent." *Id.* at 425. Dr. Wagner's treatment plan and Global Assessment of Functioning ("GAF") score of 55[1] further indicate that she viewed Ms. Nelson's mental health-related limitations as far less debilitating than Dr. Meinz did; indeed, she never opined that Ms. Nelson could not maintain employment. *See id.* at 426 ("Ms. Nelson will initially require individual treatment, minimally once weekly."). "[A] GAF score of 55 indicates only moderate symptoms and does not indicate symptoms of a disability sufficiently severe enough to preclude employment." *Lor v. Berryhill*, No. 2:16-CV-01400 AC, 2017 WL 3149901, at *5 (E.D. Cal. July 25, 2017); *see also Craig v. Colvin*, 659 Fed. App'x. 381, 382 (9th Cir. 2016).

This conflict precludes the Court from reaching the third step in the credit-as-true analysis. *Leon*, 880 F.3d at 1045; *see also Dominguez*, 808 F.3d at 409 ("Here, there are multiple inconsistencies that preclude the district court from moving on to the next step."). Resolution of this conflict falls within the exclusive province of the ALJ. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all)" is the responsibility of the ALJ). Remand for further administrative proceedings is therefore necessary. *See Treichler*, 775 F.3d at 1101 (administrative proceedings are generally useful when there is a need to resolve conflicts); *Dominguez*, 808 F.3d at 408–09 (remanding for resolution of conflicting medical opinions).

---

[1] "The GAF is a 100–point scale divided into ten numerical ranges, which permits clinicians to assign a single ranged score to a person's psychological, social, and occupational functioning." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162 n.1 (10th Cir. 2012) (quoting American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32, 34 (4th ed. 2000)). A score of 100 represents "superior functioning in a wide range of activities" and no mental health symptoms, while a score between 51 and 60 means the person has "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) [or] moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Id.*

**B.     Reopening the Commissioner's August 2014 Determination**

Ms. Nelson alternatively urges the Court to remand this case with instructions to reopen the Commissioner's August 2014 determination and incorporate the records from her prior claims into the current claim record. Dkt. No. 11 at 19. The Commissioner does not contest or even acknowledge this request in his briefing. Indeed, he arguably concedes that the Court should direct the ALJ to reopen the August 2014 determination and incorporate the records. *See* Dkt. No. 14 at 3 (arguing that the current record is insufficient and remand for further proceedings is necessary so that the ALJ can consider evidence from previous claim files).

Because an ALJ's decision not to reopen a prior benefits determination is discretionary and not itself a "final decision" within the meaning of the statute, it is generally not subject to judicial review. *Evans v. Chater*, 110 F.3d 1480, 1482 (9th Cir. 1997); *Krumpelman v. Heckler*, 767 F.2d 586, 588 (9th Cir. 1985). There are two exceptions to this general rule. The first is when a claimant challenges the denial of a petition to reopen a prior benefits decision on constitutional grounds. *Califano v. Sanders*, 430 U.S. 99, 109 (1977). The second is when an ALJ "de facto reopens" the prior adjudication by considering "on the merits" whether the claimant was disabled during an already-adjudicated period. *Lewis v. Apfel*, 236 F.3d 503, 510 (9th Cir. 2001). Ms. Nelson contends that both exceptions are met here. *See* Dkt. No. 11 at 4–11. The Court addresses them in turn.

1. <u>Ms. Nelson's Due Process Claim: Good Cause Under SSR 91-5p</u>

At the January 2022 hearing, counsel indicated that Ms. Nelson was "requesting reopening based upon . . . the new and material evidence . . . submitted in this action [i.e., 20 C.F.R. § 404.989(a)(1)] and also under SSR 91-5p given that she has severe mental impairment[ and] was unable to appeal the proceedings in this matter." Dkt. No. 9 at 32. Ms. Nelson now reiterates these grounds for reopening the August 2014 determination. She maintains that she was unrepresented and suffering from "severe bipolar" disorder with "schizoid feat[u]r[e]s" when the Commissioner

issued the determination. Dkt. No. 11 at 8. According to her, this provides good cause to extend the expired deadline for requesting review under SSR 91-5p. *Id.* at 7–8. Ms. Nelson also claims to have furnished new evidence sufficient to establish good cause to reopen the determination under 20 C.F.R. § 404.989(a)(1). *Id.* at 8–9.

> *(a) The Court Has Jurisdiction to Review the ALJ's Decision Not to Reopen the August 2014 Determination*

Ms. Nelson has asserted a colorable due process claim with respect to her potential mental incapacity and resulting inability to timely seek review of the Commissioner's August 2014 determination. *See Klemm v. Astrue*, 543 F.3d 1139, 1144–45 (9th Cir. 2008) ("An allegation of mental impairment can form the basis of a colorable constitutional claim if the mental impairment prevented the claimant from understanding how to contest the denial of benefits."); *Udd v. Massanari*, 245 F.3d 1096, 1099 (9th Cir. 2001) ("Where a claimant alleges that a prior determination should be reopened because he suffered from a mental impairment and was not represented by counsel at the time of the denial of benefits, he has asserted a colorable constitutional claim.").[2] The Court therefore has jurisdiction to review the ALJ's refusal to reopen

---

[2] Ms. Nelson's due process claim appears to have two other dimensions—neither of which is colorable. She first argues that the Commissioner "denied her right to appeal[ and] to seek reconsideration of the prior claims, particularly the 2000 and 2004 claims, as the [agency's] initial decision was issued . . . on August 5, 2014, more than a decade after she filed the application." Dkt. No. 11 at 5–6. This does not amount to a colorable due process claim. Ms. Nelson's theory is not that the lengthy delay in adjudication was itself unconstitutional; rather, she suggests that this delay somehow impaired her ability to seek administrative review of the decision. But she does not explain how or why the passage of time prevented her from obtaining a full and fair review of the Commissioner's August 2014 determination once it issued. Nor does she cite authority in support of this theory. *See Klemm*, 543 F.3d at 1144 ("A constitutional claim is colorable if it is not wholly insubstantial, immaterial, or frivolous." (cleaned up)). Ms. Nelson also suggests in passing that the Commissioner's delay "rais[es] questions about when and whether an earlier initial denial notice was ever sent to [her] in a timely fashion." Dkt. No. 11 at 6. This conclusory assertion is likewise unavailing. Nothing in the record supports her suggestion that the Commissioner reached a decision prior to August 2014, let alone that he failed to provide notice of that decision. True, the "Disability Determination Explanation" in the record includes a disclaimer that the August 5, 2014 decision date "may be later than the date on the Determination or Decision notice." Dkt. No. 9 at 65. But again, Ms. Nelson's suggestion that the Commissioner might have reached a decision earlier does not plausibly establish that he (1) did in fact make an earlier determination and (2) failed to provide timely notice of that determination. *See Anderson v. Babbitt*, 230 F.3d 1158, 1163 (9th Cir. 2000) (to be colorable, a claim must be supported by "facts sufficient to state a violation of substantive or procedural due process." (quoting *Hoye v. Sullivan*, 985 F.2d 990, 992 (9th Cir. 1992))).

the August 2014 determination. However, it reviews only the ALJ's finding that Ms. Nelson failed to show mental incapacity for purposes of extending the deadline to seek review. *See* Dkt. No. 9 at 8. The Court lacks jurisdiction over the ALJ's conclusion that Ms. Nelson failed to present "new and material evidence." *Id.* That aspect of Ms. Nelson's argument does not implicate any due process concerns; rather, it is merely a challenge to the merits of the ALJ's finding that the proffered evidence did not warrant reopening under Section 404.989(a)(1). *See Panages v. Bowen*, 871 F.2d 91, 93 (9th Cir. 1989).

*(b) The ALJ Committed Legal Error*

If a claimant presents evidence that mental incapacity prevented her from timely requesting review of an adverse determination, decision, dismissal, or review by a district court, and the claimant had no one legally responsible for prosecuting the claim (e.g., an attorney) at the time of the administrative action, the ALJ must determine whether good cause exists for extending the time to request review. SSR 91-5p, 1983–1991 Soc. Sec. Rep. Serv. 809, 1991 WL 208067, at *2 (July 1, 1991). A claimant establishes mental incapacity for the purpose of establishing good cause when the evidence shows that she "lacked the mental capacity to understand the procedures for requesting review." *Id.* The ALJ considers four factors "as they existed at the time of the prior administrative action" to determine whether the claimant lacked the mental capacity to understand the procedures for requesting review: (1) inability to read or write; (2) lack of facility with the English language; (3) limited education; and (4) any mental or physical condition which limits the claimant's ability to do things for herself. *Id.* The mental incapacity determination, however, "must be based on all the pertinent facts in a particular case," and the ALJ "will resolve any reasonable doubt in favor of the claimant." *Id.*[3]

---

[3] Should good cause be found, it does not matter how much time has passed since the adverse administrative action; the ALJ "will extend the time for requesting review and take the action which would have been appropriate had the

ORDER REVERSING DENIAL OF BENEFITS AND REMANDING FOR FURTHER PROCEEDINGS - 12

The Court reviews the ALJ's SSR 91-5p determination under the substantial evidence standard to determine whether Ms. Nelson lacked the requisite mental capacity at the time of the adverse benefits determination—here, August 2014. *Udd*, 245 F.3d at 1100. Under this standard of review, the ALJ's determination must be reversed if it is not supported by substantial evidence or is based on an application of the wrong legal standard. *See Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). The Court must reverse the ALJ's determination and remand this case because she applied the wrong legal standard and failed to support her conclusion with sufficient analysis to permit meaningful review.

*(i)* The ALJ Applied an Incorrect Legal Standard

The ALJ's decision does not mention SSR 91-5p. Her discussion of Ms. Nelson's request to reopen the August 2014 determination is limited to two sentences: "Lastly, the request for reopening is denied. The claimant has not provided good cause in the way of showing there is new and material evidence[,] nor have they shown mental incapacity as required by SSR 96-5p." Dkt. No. 9 at 8. To the extent the ALJ found that Ms. Nelson was not mentally incapacitated in August 2014 and thus failed to show good cause for an extension of the review deadline, that conclusion is premised on an application of the wrong standard for assessing mental incapacity.

The ALJ appears to have relied on SSR 96-5p, which clarifies agency policy for considering medical opinions related to, for example, a claimant's residual functional capacity, whether a claimant's residual functional capacity prevents her from doing past relevant work, and whether a claimant is "disabled" under the Social Security Act. SSR 96-5p, 1996 WL 374183, at *1 (July 2, 1996). But those inquiries materially differ from the narrow one at hand: whether Ms. Nelson lacked the mental capacity in August 2014 "to understand the procedures for requesting

---

claimant filed a timely request for review." *Id.*

review" of the Commissioner's decision. SSR 91-5p, at *2; *see, e.g.*, *Byam v. Barnhart*, 336 F.3d 172, 183 (2d Cir. 2003) ("'Moderate limitations' in an employment context may be severe ones in understanding legal notice and filing requests for administrative and judicial review. Depression and social phobia might not prevent one from holding certain jobs, but they may impede one's ability to act on notice or go to a hearing."). This issue must be resolved by reference to the four factors set forth above. The ALJ's failure to consider those factors is grounds for reversal and remand. *See Udd*, 245 F.3d at 1100.

*(ii)* The ALJ Failed to Adequately Support Her Conclusion

The ALJ also provided no analysis supporting her decision not to extend the deadline for requesting review. While an ALJ will not be faulted for explaining her decisions with "less than ideal clarity," *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974), she must still "set forth the reasoning behind [her] decisions in a way that allows for meaningful review," *Brown-Hunter*, 806 F.3d at 492. *Cf. Dexter v. Colvin*, 731 F.3d 977, 981 (9th Cir. 2013) ("[S]ome explanation is required of why the applicant's potentially valid reasons for good cause are rejected[.]"). The ALJ's conclusory, two-sentence discussion in this case does not suffice. Again, the Court must be able to discern the ALJ's path to her conclusion. *Brown-Hunter*, 806 F.3d at 492. It may not speculate as to the grounds for that conclusion or otherwise fashion its own legally sound means to that end. *See Treichler*, 775 F.3d at 1103 (a court cannot speculate as to the ALJ's reasoning); *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (a court may not affirm an ALJ's decision on a ground not invoked by the ALJ). Nor may the Court "make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Brown-Hunter*, 806 F.3d at 492. Remand is therefore appropriate on this basis, too. *See Treichler*, 775 F.3d at 1101 (collecting examples of remand for application of the correct legal standard).

2. <u>Judicial Review Under the Second Exception to the General Jurisdictional Bar is Precluded</u>

The Court cannot determine whether the ALJ considered "on the merits" Ms. Nelson's disability during an already-adjudicated period. *See Lewis*, 236 F.3d at 510. As Ms. Nelson points out, the ALJ performed a "deep dive" into the record and thoroughly reviewed evidence spanning from 1998 to 2022. Dkt. No. 11 at 10; *see* Dkt. No. 9 at 8–18. But the ALJ's ultimate determination was limited to whether Ms. Nelson's was disabled between September 18, 1998 (amended onset date) and January 3, 2000 (date she attained age 22). Dkt. No. 9 at 18. That the ALJ surveyed and assessed evidence spanning two decades does not mean that she ruled on the merits of Ms. Nelson's disability for that entire period. And nothing in the record indicates the disability periods at issue in Ms. Nelson's prior claims. Indeed, the parties have left the Court mostly in the dark as to the details of those claims and the August 2014 determination. The Court thus lacks details essential to the jurisdictional inquiry under the second exception to the general jurisdictional bar. This precludes review under that exception.

### III.  CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should reconsider Ms. Nelson's symptom testimony and all other improperly discredited evidence; reconduct the disability analysis to remedy the deficiencies identified above; reconsider whether Ms. Nelson showed good cause to extend the deadline for seeking review of the August 2014 determination; and issue a new decision.

Dated this 21st day of March, 2024.

Lauren King
United States District Judge